IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| KENNETH ARNOLD, | 1:21-CV-00241-RAL |
| Plaintiff | |
| | RICHARD A. LANZILLO |
| vs. | Chief United States Magistrate Judge |
| D. OBERLANDER, et al., | Memorandum Opinion on Defendants' Motion for Summary Judgment |
| Defendants | ECF NO. 36 |

I. **Introduction**

Plaintiff Kenneth Arnold, an inmate confined at the State Correctional Institution at Forest (SCI-Forest), initiated this pro se civil rights action seeking monetary relief pursuant to 42 U.S.C. § 1983. In his Complaint, Arnold asserts that officials at SCI-Forest violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to adequately protect him from the risk of contracting COVID-19. ECF No. 11. As Defendants, Arnold has named the Superintendent of SCI-Forest, Derek Oberlander; Unit Managers Crowther and Bauer; and an individual, C. Shipe, identified as the Supervisor of Employment. *Id.*

Following the close of discovery, Defendants filed a Motion for Summary Judgment accompanied by a supporting Brief, a Concise Statement of Material Facts, and an Appendix of Exhibits. ECF Nos. 36-39. Arnold responded by filing a Response, Brief in Opposition, and

Responsive Concise Statement of Material Facts. ECF Nos. 46-48. Defendants' motion is ripe for adjudication.[1]

## II. Factual Background

The following factual recitation is derived from the statements of fact and supporting exhibits submitted by the parties. At all relevant times, Arnold, an inmate in the custody of the Pennsylvania Department of Corrections (DOC), was incarcerated at SCI-Forest. ECF No. 39 ¶ 1. Prior to the events upon which Arnold bases his claims in this action, he was designated as a "z-code" inmate (i.e., an inmate with single cell status) and assigned to housing unit EA. *Id.* ¶¶ 1, 5.

In January 2021, staff at SCI-Forest began testing all general population inmates in housing units A-H for COVID-19. *Id.* ¶ 2. Arnold tested negative during this round of testing. *Id.* ¶ 4. To control the spread of the virus, the prison moved inmates who had tested positive into certain designated units, one of which was unit EA, for quarantine purposes. *Id.* ¶ 8. This forced Arnold to move to another unit. *Id.* ¶ 5. Arnold ended up in unit HA, a unit containing both COVID-positive and negative inmates.[2] *Id.* ¶ 8. Positive and negative inmates on HA were not permitted to mix, and those who had a positive test had their doors marked to ensure that quarantine procedures were followed. *Id.*

In addition to testing and quarantining, the DOC enacted various proactive steps to prevent the spread of the virus. These included the following: "requiring that all staff and

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

[2] Defendants assert that Arnold was moved to unit HA because it had the only available single cell. ECF No. 39 ¶ 6. Arnold disputes this assertion, suggesting that there was a single cell available on unit FB. *See* ECF No. 48 ¶ 6. As discussed more fully below, this dispute is ultimately immaterial.

inmates wear masks; screening all incoming and outgoing inmates; subjecting all staff members to enhanced screening upon entering the facilities; mandating that inmates showing symptoms of the COVID-19 virus will be isolated and staff with symptoms will be sent home; limiting inmate movements and mandating 16 and then 8-men cohorts; and restricting visitation with family and friends to virtual methods." *Id.* ¶ 11.

Despite these measures, Arnold repeatedly expressed concern to prison officials that his transfer to HA put him at risk of contracting COVID. ECF No. 11 ¶ 30. Between January 22 and February 6, 2021, Arnold and his family complained to each of the Defendants about Arnold's housing status and risk of exposure. *See* ECF No. 11 ¶¶ 29-37. In each instance, Arnold's request to move to another housing unit was rejected. *Id.*

Arnold tested positive for COVID on February 12, 2021. ECF No. 39 ¶ 22. While in quarantine, his temperature and blood oxygen levels were regularly checked. ECF No. 38-1 at 27. His medical records reflect that he remained asymptomatic throughout his infection, aside from a single complaint of coughing and shortness of breath on February 22, 2021. ECF No. 39 ¶ 28. At deposition, Arnold also testified that he lost his senses of taste and smell and experienced regular migraines. ECF No. 38-1 at 27.

### III. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A

3

disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

### IV. Analysis

#### A. Official capacity claims

Arnold's pleading makes clear that he is suing the Defendants "in their official capacities." ECF No. 11 ¶ 5. At deposition, Arnold clarified that he is proceeding against Defendants <u>exclusively</u> in their official capacities:

> Q: Just a couple more questions, Mr. Arnold. You mentioned that you [sued] the Defendants in their official capacity in your complaint. Is that correct?
>
> A: Yes, that's correct.
>
> Q: Okay. Only in their official capacity?
>
> A: Yeah, only in their official capacity.

ECF No. 38-1 at 31. Based on this exchange, Defendants contend that Arnold's claims are barred by the immunity afforded to the Commonwealth of Pennsylvania by the Eleventh Amendment.

It is axiomatic that "the Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities." *See, e.g., O'Donnell v. Pennsylvania Dept. of Corrections*, 790 F.Supp.2d 289, 305 (M.D. Pa. 2011) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996)). As a department of the Commonwealth of Pennsylvania, the DOC is immune from suit in federal court unless said immunity has been abrogated by Congress or waived by the state. *MCI Telecomm Corp. v. Bell-Atlantic-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001). *See also Lavia v. Pennsylvania, Dept. of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000) (noting that, as an agency of the Commonwealth of Pennsylvania, the DOC is entitled to assert the immunities afforded by the Eleventh Amendment). Moreover, "[b]ecause the Pennsylvania DOC is a part of the executive

department of the Commonwealth of Pennsylvania, its employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities." *Johnson v. Wenerowicz*, 440 Fed. Appx. 60, 62 (3d Cir. 2011).

"Pennsylvania has not waived its immunity from suit in federal court." *Toth v. California Univ. of Pennsylvania*, 844 F.Supp.2d 611, 648 (W.D. Pa. 2012) (citing 42 Pa.C.S.A. § 8521(b)). Nor did Congress intend by the general language of Section 1983 to override the traditional sovereign immunity afforded to the states. *Quern v. Jordan*, 440 U.S. 332, 342-45 (1979); *see also Toth*, 844 F.Supp.2d at 648. Consequently, the Defendants – each of whom is an official, officer, or employee of the Commonwealth of Pennsylvania – are entitled to immunity from any monetary claims against them in their official capacities. Summary judgment would be appropriate on this basis alone. Nevertheless, out of an abundance of caution, and mindful of Arnold's *pro se* status, the Court will also address Arnold's failure to protect claim on the merits.

### B. Failure to protect

Arnold's sole claim is that Defendants failed to adequately protect him from the risk of contracting COVID-19 by placing him in a housing unit with inmates who had tested positive for the virus. To state a viable failure-to-protect claim, he must establish that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused the plaintiff to suffer harm. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). This standard has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective requirement, the plaintiff must show an "objectively intolerable risk of harm." *Id*. To satisfy the subjective requirement, the plaintiff must show that the defendants: (1) were aware of facts from which the inference could be drawn that a

substantial risk of harm existed; (2) subjectively drew the inference that the risk existed; and (3) disregarded the risk. *Id.* at 837.

Notably, prison officials who knew of a substantial risk to inmate health or safety may still avoid liability if they responded reasonably to the risk, whether or not the harm was ultimately averted. *Id.* at 844. In the context of the COVID-19 pandemic claims, courts must consider "the medical care prison officials have provided and the prophylactic steps they have taken to reduce the disease's spread." *See Easley v. Wetzel*, 2021 WL 1200214, at *5 (W.D. Pa. Feb. 26, 2021) (quoting *Wilson v. Williams*, 961 F3d 829, 840 (6th Cir. 2020) (noting that the key inquiry is whether officials "responded reasonably to the risk" of COVID-19) (citing *Farmer*, 511 U.S. at 844)). The reviewing court "must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic, as constitutional rules 'are not subject to mechanical application in unfamiliar territory.'" *Zuber v. Sorber*, 2023 WL 144437, at *4 (E.D. Pa. Jan. 9, 2023) (quoting *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020), and *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the facility has taken concrete steps towards mitigating the medical effects of COVID-19 in a detention facility, a prisoner will fall "well short" of establishing liability, even though prison officials did not "eliminate all risk" of contracting COVID. *Hope*, 972 F.3d at 330-31. *See also Brewer v. Dauphin County Prison*, 2022 WL 16858014, at *6 (M.D. Pa. June 29, 2022) ("[C]ourts have rejected Eighth Amendment claims that are based upon contracting COVID-19 in prison, particularly where it can be shown that supervisors enacted policies that mandated prison officials to adhere to the CDC guidelines in light of the pandemic.").

This Court has already recognized "the unprecedented magnitude of the COVID-19

pandemic and the extremely serious health risks it presents, particularly within the prison setting." *Easley v. Wetzel*, 2021 WL 1200214, at *4 (W.D. Pa. Feb. 26, 2021). Moreover, Arnold does not dispute that the DOC and officials at SCI-Forest implemented a host of precautionary measures to combat the COVID pandemic. He suggests, however, that prison officials disregarded those measures by ordering his transfer to a prison unit that contained both COVID-positive and negative inmates.

While the Court understands the distinction Arnold is drawing – that the DOC may violate the Constitution in a specific instance, with respect to a particular decision, despite having implemented otherwise adequate precautionary measures – summary judgment is still warranted. A thorough review of recent COVID-19 caselaw makes clear that simply placing an inmate in the same unit as other inmates who are COVID-positive is not enough to violate the Constitution. In *Chapolini v. City of Philadelphia*, for example, the plaintiff alleged that he was forced to share a cell with numerous inmates who had not gone through the appropriate COVID quarantine protocol. *Chapolini*, 2022 WL 815444, at *14 (E.D. Pa. Mar. 17, 2022). As in the instant case, his numerous complaints to prison staff were disregarded. *Id*. The Court held that these allegations were insufficient to state a claim, noting that, "even if quarantine protocols were inadequate and improperly followed, these allegations show negligence on the part of [prison officials], which is not the constitutional standard." *Id.* at *15. Other courts have consistently reached the same conclusion. *See, e.g.*, *DeJesus v. Steinhart*, 2023 WL 2471342, at *6 (M.D. Pa. Mar. 10, 2023) (prison officials were not liable for failure to protect despite "knowingly disregarding the 'inconclusive' lab test results, and DOC's strict six foot social distancing protocol, while co-signing orders for Mr. DeJesus to be moved to double occupancy cell #41 on FA-housing unit with [an inmate who] affirmatively tested positive for COVID-19");

*Lanko v. Wetzel*, 2023 WL 2307101, at *8 (W.D. Pa. Mar. 1, 2023) (rejecting claim of failure to protect based on prison's inconsistent enforcement of COVID protocols); *Pumba v. Kowal*, 2022 WL 2805520, at *4 (E.D. Pa. July 18, 2022) (no violation where a sergeant permitted a pod worker who tested positive to clean the plaintiff's cell without wearing a mask); *Greene v. Ellis*, 2022 WL 4288279, at *3 (D.N.J. Sept. 16, 2022) (prisoner's allegation that jail did not provide adequate social distancing and that there was not a mask exchange program was insufficient to state a constitutional violation).

This outcome is consistent with the well-established principle that federal courts "are not overseers of the day-to-day management of prisons." *Brooks v. Samuel*, 2018 WL 2287510, at *2 (M.D. Pa. May 18, 2018). *See also Turner v. Safley*, 482 U.S. 78, 85-85 (1987) ("Prison administration is . . . a task that has been committed to the responsibility of [the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint."). Indeed, "prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security." *Harris v. Centurion*, 2021 WL 5177431, at *6 (D. Del. Nov. 8, 2021) (citing *Wolff*, 418 U.S. at 566). This deference extends to "the DOC's housing decisions during the COVID pandemic." *Id.* (dismissing inmate's request for an order "directing the DOC to take certain action on the housing of inmates who have, and who have not, received COVID-19 vaccinations.").

In short, while Arnold may have preferred a different housing assignment, he has failed to demonstrate that his placement in unit HA violated the Constitution. Defendants' motion for summary judgment will be granted.

## V. Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted. A separate judgment will follow.

DATED this 16th day of May, 2023.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE
